IN RE PETITION OF CITY OF DES MOINES FOR CONFIRMATION OF ASSESSMENTS AND VALUATIONS FOR REPAVING WALNUT STREET BRIDGE.

DES MOINES RAILWAY COMPANY, Appellant, v. CITY OF DES MOINES, Appellee.

No. 42945.

June 21, 1935.

Corwin R. Bennett, for appellant.

F. T. Van Liew and C. I. McNutt, for appellee.

ANDERSON, C. J.—■■■ The street railway company is the owner and occupant of a double track across the Walnut street bridge in the city of Des Moines. This bridge was repaved, and an assessment of $1,910.52 was lodged against the street car company. The street car company insists that this assessment is not in accordance with the law. The statute with reference thereto will be hereinafter set out.

The city insists that, notwithstanding the sections of the statute relied on by the street car company, this assessment is in strict accord with the provisions of the ordinances of the city of Des Moines. The question, therefore, is which of these contentions is correct.

The franchise ordinance of the street railway company, known as Ordinance No. 3147 of the Revised Ordinances of the City of Des Moines, passed under date of October 24, 1921, and which franchise ordinance was accepted by the street car company, among other things provides:

"Section 2596. Whenever the city shall grade, pave, gravel, or macadamize any street, *and so long as the statutes of the state of Iowa do not authorize any other or different method therefor,* the company under the conditions in this ordinance contained, shall grade, gravel, pave, or macadamize that portion of said

street between the rails of its tracks, and one foot outside thereof, and whenever the city shall repave, regravel, or remacadamize any street *and so long as the statutes of the state of Iowa do not authorize any other or different method therefor,* the company, under the conditions in this ordinance contained, * * * shall repave, regravel, or remacadamize that portion of said street between the rails of the tracks and one foot outside thereof, and shall at all times keep the pavement, gravel, or macadam between the rails of the tracks and one foot outside of each outer rail of its tracks in good repair, and all such paving, graveling, macadamizing, or repaving, regraveling, or remacadamizing done by the company shall be at its own expense * * *.''

Section 2597 reads as follows:

''The authority in this ordinance granted shall extend to and authorize the use of bridges and viaducts across the Des Moines River at Walnut street, Locust street, Grand Avenue, * * *. The company shall at its own expense pave, floor, keep in repair, and free from snow, so much of the floor and pavement of each bridge and viaduct crossed by its tracks as is included in the space three and one-half feet each way from a center line between the rails of the tracks, and all such construction and work is to be done and performed under the same rules and requirements as are herein provided for like or similar construction and work to be done and performed upon the streets of the city.''

If the city's contention is right, it must be found in the parts of its ordinances above quoted.

It is the contention of the street car company that the aforesaid ordinances have nothing whatever to do with this assessment because of the provisions of section 6051-c1 of the Code of 1931. This section of the Code was adopted by the Forty-third general Assembly (Chapter 182), and went into operation by publication on the 24th day of April, 1929, and reads, so far as is material, as follows:

''Section 1. Street railway companies operating upon the streets, avenues and public places of cities and towns, including cities under special charter, shall provide a suitable foundation for the track of a width equal to their ties, but in no case less than the width comprised between lines lying one foot outside

of each rail of the track, and shall be assessed for the construction or reconstruction of paving between the rails of their track or tracks, and for one foot outside of each rail thereof, in the amount that the cost of such pavement per yard of area exceeds the cost per yard of the remainder of the paving upon such street. In the making of assessments for paving upon streets, avenues, or public places of cities and towns, including cities acting under special charter, along or upon which a street railway track or tracks are located, in the event that the track or tracks also are to be paved or repaved; the engineer shall make an estimate of the cost of building such improvement, and he shall, also, make an estimate of the cost of building such an improvement upon said street, avenue or public place as it would be in the event that the street car tracks did not there exist; and the street railway company shall be charged with the difference in said estimates of cost and shall pay the same as other special assessments are paid.

''Separate bids shall be taken in case of single track upon that portion of the street between the rails and one foot outside of each rail and in case of double track upon the entire portion of the street included between lines parallel to and one foot outside of the outer rail of each track. The street railway company shall be permitted to bid upon this portion of the pavement and, if the lowest bidder thereupon shall be awarded the contract therefor. One-third of the remaining cost of the improvement for the area between the rails of the tracks of the street railway company and one foot outside thereof shall be assessed against the street railway company, one-third thereof shall be assessed against the abutting property and the owner thereof, and one-third thereof shall be paid for by the city either out of the improvement fund or general fund of the city.''

It will be noticed that the right to use the streets in the city of Des Moines for street car purposes is provided for in the first of the above-quoted sections from the ordinances, and that the right to use the bridges is included in the succeeding section. It will also be noticed that the original pavement of the parts occupied by the street railway on both streets and bridges is provided for in the aforesaid two sections. It will also be noticed that, in the second section with reference to bridges, there is no provision whatever as to repavement, and it would natural-

ly follow that the right to charge the street car company for repavement must arise from the consideration of these two sections of the ordinances considered together. The first section above quoted provided as to how this improvement is to be paid for by the company, *so long as the statutes of the state do not change the method of payment therefor.* We think that this provision must carry over from the first section of the ordinance above quoted into the second section, as the first section is the only section that provides for repavement and there is no provision in the second section with reference to providing for repavement. We therefore reach the conclusion that in the franchise ordinance above quoted the provision as to the cost and expense of repavement shall govern, unless the same is superseded by the aforesaid section 6051-c1.

At this point in the discussion we are confronted with a situation that requires an interpretation of the aforesaid section 6051-c1. The opening sentence of said section is: "Street railway companies operating upon the streets, avenues and public places of cities and towns * * *." The question is whether or not the phrases above set out are broad enough to cover bridges. In other words, does the term "streets" or "public places" include bridges? If they do, then the contention of the street car company is correct; if they do not, then the contention of the city is right.

■■■ Whether or not the term "street" includes a bridge, under our decisions, is somewhat in doubt. See Sachs, Adm'r v. City of Sioux City, 109 Iowa 224, 80 N. W. 336, and City of Cedar Rapids v. Cedar Rapids & M. C. Ry. Co., 108 Iowa 406, 79 N. W. 125. But, passing this question without making a definite pronouncement on it, we turn to the other term used in the statute, to wit, "public place." In other words, the question narrows itself down to a question of whether a bridge, such as the one in controversy herein, is a "public place" within the meaning of the statute. The term "public place" is relative, and depends for its meaning largely on the context in which it is used. Generally stated, it is the converse of a private place. A public bridge is a bridge across a creek, river, or other natural body of water, etc., erected for the accommodation of the public, and the term "bridge" covers the idea of a passageway by which travelers are enabled to pass over streams or other impediments to a free passage, and therefore a building inaccessible at either

end is not, in law, regarded as a bridge. Elliot on Roads and Streets (2d Ed.) vol. 1, p. 36. When this term "public place" is used in the setting in which it is here used, we think it is intended to include bridges; else, if it were not so intended, this statute would not authorize assessments against street car companies for such bridges. Many definitions of the term "public place" are referred to in 48 C. J. p. 1215; and, as applied to streets and highways, see 6 Words and Phrases, page 5809; also, the definition of the same phrase in the Second, Third, and Fourth series, Words and Phrases. It would seem, therefore, that, as this phrase is used in the section of the Code quoted, it is and was intended to cover bridges. This being true, this section of the statute is all-inclusive and provides a specific method for this assessment against the street car company, and, under the very terms of the ordinance, the statute supersedes the ordinance, and the assessment properly made against the street car company must be governed by the statute and not the ordinance. The city seeks to advantage itself by reason of the provisions of section 6577 of the Code of 1931. The trouble with the argument on this proposition is that the method marked out originally in that enactment provided that the assessment was to be made as provided in sections 6052, 6053, 6054, 6057, and 6058; but the aforesaid acts of the Forty-third General Assembly especially provided for the repeal of sections 6057 and 6058, and hence left the last-named section without any basis whatever for calculation or method of assessment.

■■■ It is apparent on the face af the enactment (Forty-third General Assembly) that the intent of the legislature was to cover the whole subject of assessment against street railways and lay down a basic rule for the government of the same; and, whether or not the provisions of the ordinance in relation to these matters are defeated by its own terms, yet we conclude that the purpose of the legislature was to definitely settle and fix, by statutory enactment, the method of assessments against street railways. It follows, therefore, that the assessment against this street railway should have been made under the terms of the Acts of the Forty-third General Assembly, section 1, now appearing in the Code as section 6051-c1. Under the record as shown in the case, and applying the last-named section of the Code as controlling the situation before us, it necessarily follows that the contention of the street car company is right, and that,

instead of an assessment of $1,910.52 against the company, the assessment should have been one-third thereof, or $636.84.—Reversed.

MITCHELL, PARSONS, DONEGAN, HAMILTON, RICHARDS, and POWERS, JJ., concur.